**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| Bayonne Plant Holding, L.L.C.,<br>Plaintiff,<br>v.<br>Fermi Equipment Holdco, LLC,<br>Defendant. | Civil Action No. |

## COMPLAINT

Plaintiff, Bayonne Plant Holding, L.L.C. ("Bayonne"), brings this action against Defendant, Fermi Equipment Holdco, LLC ("Fermi"), to recover millions of dollars in unpaid, contractually-mandated charges and remediation costs arising from Fermi's breach of a negotiated Equipment Purchase Agreement and First Amendment thereto:

## PARTIES

1. Plaintiff Bayonne Plant Holding, L.L.C. is a limited liability company formed under the laws of Delaware with a principal place of business in Louisiana. Bayonne's sole member is IMTT-Bayonne LLC, a Delaware limited liability company. IMTT-Bayonne LLC's sole member is ITT Holdings LLC, a Delaware limited liability company. ITT Holdings LLC's sole member is IMTT Holdings LLC, a Delaware limited liability company. IMTT Holdings LLC has two members: Matex Holdings LLC and Matex Terminal LLC, each a Delaware limited liability company. Matex Holdings LLC's sole member is Matex Terminal Holdings LLC, a Delaware limited liability company. Matex Terminal Holdings LLC's sole member is RS Ivy Holdco LLC, a Delaware limited liability company. RS Ivy Holdco LLC's sole member is RS Ivy

Parent LLC, a Delaware limited liability company. RS Ivy Parent LLC's sole member is IMTT Topco, Inc., a Delaware corporation with its principal place of business in Louisiana.

2. Defendant Fermi Equipment Holdco, LLC is a limited liability company formed under the laws of Delaware with a principal place of business in Texas. Upon information and belief, Fermi Equipment Holdco, LLC is a citizen of Texas.

**JURISDICTION AND VENUE**

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4. This Court has personal jurisdiction over Fermi because it purposefully availed itself of the privilege of conducting business in New Jersey by entering into a contract to be performed in New Jersey, agreeing to a New Jersey forum-selection clause, conducting extensive equipment removal operations at Bayonne's facility in Bayonne, New Jersey, and incurring the obligations giving rise to this action in New Jersey.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Bayonne's claims occurred in this District, including Fermi's contractual performance and breach at Bayonne's New Jersey facility.

**STATEMENT OF FACTS**

**A. The Equipment Purchase Agreement**

6. On June 26, 2025, Bayonne and Fermi entered into an Equipment Purchase Agreement under which Bayonne agreed to sell certain power generation equipment to Fermi for $18,000,000.00 (the "Agreement"). The Agreement is attached hereto as Exhibit A.

7. Under Section 5.03 of the Agreement, Fermi was solely responsible, at its own cost and expense, for removing the purchased equipment from the Site, repairing any damage caused

by its removal activities, restoring Bayonne's buildings to their pre-removal condition, and removing all resulting debris and waste materials.

8. The Agreement required Bayonne to disconnect utilities servicing the purchased equipment and, upon completion of those disconnections, to notify Fermi that it could commence dismantling and removal (the "Removal Commencement Notice").

9. The Agreement provided that removal of the equipment was to be completed within ninety (90) days after Fermi's receipt of the Removal Commencement Notice.

10. The Agreement further provided that it would be governed by and construed in accordance with the laws of the State of New Jersey and that any disputes arising from the Agreement would be litigated in New Jersey.

**B. Removal Commencement and Initial Removal Operations**

11. Bayonne timely completed all required utility disconnections associated with the purchased equipment.

12. On July 25, 2025, Bayonne issued the Removal Commencement Notice to Fermi, confirming that all required disconnections had been completed and that Fermi could commence removal operations.

13. On July 30, 2025, Fermi formally acknowledged receipt of the Removal Commencement Notice and confirmed that it had inspected the Site and determined that the disconnection work had been completed.

14. Following receipt of the Removal Commencement Notice, Fermi commenced equipment removal operations at the Site.

15. Throughout the course of the removal process, Fermi repeatedly failed to undertake its work in a good and workman like manner consistent with industry standards and engaged in

various conduct posing safety risks and concerns. By way of example, during the removal operations at the Site, Fermi attempted access to confined spaces without proper permitting, which created serious hazards at the Site and resulted in a citation.

**C. The First Amendment and Negotiated Extended Access**

16. Fermi was originally granted ninety (90) days from the Removal Commencement Date to complete removal of the purchased equipment and to restore Bayonne's Site.

17. As that original removal period was expiring, Fermi requested additional time and expanded access rights in order to complete its removal and restoration obligations, including requesting 24/7 access to the Site.

18. Effective October 23, 2025, Bayonne and Fermi entered into a First Amendment to Equipment Purchase Agreement (the "First Amendment"), pursuant to which Bayonne agreed to extend Fermi's deadline to complete removal and restoration of the Site and to provide expanded site access, in exchange for additional, negotiated consideration. The First Amendment is attached hereto as Exhibit B.

19. The First Amendment includes a mutual release, expressly releasing any and all claims pre-dating the effective date of the First Amendment. As it relates to Seller, the Agreement provides:

> Buyer hereby RELEASES, ACQUITS, AND FOREVER DISCHARGES Seller and its members, directors, managers, officers, equity holders, officers, employees, and agents (the "Buyer Releasees") from any and all actions, causes of action, claims, costs, expenses, attorney fees, damages, losses and liabilities, matured or contingent, whether in contract or in tort ("Claims and Liabilities") which Buyer may have against the Buyer Releasees arising out of or in any way related to, whether directly or indirectly to breaches of the Purchase Agreement prior to the First Amendment Date; provided, however, that such release is limited to Claims and Liabilities that are either actually known to Buyer or its removal

> contractors or would have been known if due inquiry had been made.

Exhibit B, § 6.a.

20. Additionally, the First Amendment confirmed, among other things, that:

a. The Removal Commencement Date occurred on July 25, 2025;

b. Certain prior overtime and reimbursement invoices issued by Bayonne were correct, final, and not subject to audit or adjustment; and

c. Those confirmed charges were due and payable without discount.

21. The First Amendment further memorialized the parties' negotiated resolution of outstanding risk and responsibility, including provisions governing the extended access charges, continued accrual in the event of abandonment, and other matters expressly set forth therein.

22. As amended by the First Amendment, Section 5.03(d) of the Agreement required Fermi to use commercially reasonable efforts to complete removal of the equipment, restoration of Bayonne's buildings, and clean-up of the Site by December 31, 2025, subject only to further extension if Fermi was diligently working to complete those obligations.

23. The First Amendment further provided that if Fermi abandoned its work before completing those obligations, Bayonne would be entitled to exercise its contractual rights to complete the work itself, at Fermi's expense (the "Seller's Completion Rights").

**D. Negotiated Access Charges and Payment Obligations**

24. The extended site access granted to Fermi after expiration of the original removal period was not incidental, gratuitous, or automatic. It was the product of an arms-length negotiation between sophisticated commercial entities, each represented by experienced legal counsel, including Fermi's counsel from Holland & Knight LLP, addressing the substantial operational, safety, and cost burdens associated with allowing continued access to an active industrial facility.

25. Fermi expressly requested expanded and continuous access to the Site beyond the access rights originally granted in the Agreement to complete "Pick Up," defined as the physical removal of the Purchased Assets together with the completion of all required restoration, repair, and cleanup work at the Site, including the ability for its personnel and contractors to work outside normal business hours and on a twenty-four-hour-per-day, seven-day-per-week basis.

26. Bayonne agreed to provide that expanded access only in exchange for additional, expressly negotiated consideration reflecting the significant costs, risks, staffing demands, and operational impacts associated with prolonged third-party access to its active facility.

27. Those negotiated terms were memorialized in Section 5.03(f) of the Agreement as amended by the First Amendment, which set forth a detailed, graduated fee structure tied directly to the scope and duration of the access requested by Fermi.

28. Under Section 5.03(f) as amended:

a. Through October 23, 2025, Fermi agreed to pay Bayonne $1,500 per hour for work performed at the Site outside normal business hours;

b. From October 24, 2025 through November 27, 2025, Fermi was granted continuous twenty-four-hour-per-day, seven-day-per-week access to the Site and agreed to pay Bayonne $1,500 per hour for all hours that Fermi or its contractors were present at the Site (the "Hourly Charge" or "Chargeable Hours"); and

c. Commencing November 28, 2025, Fermi was granted continued unrestricted access and agreed to pay a daily charge of $50,000.00 per day or partial day (the "Daily Charge") through completion of its removal, restoration, and clean-up obligations.

29. These access charges were negotiated consideration for the continued right to occupy and utilize Bayonne's Site beyond the period originally contemplated by the Agreement.

30. The First Amendment expressly acknowledged that these access charges were exchanged for the expanded access requested by Fermi, and that Bayonne's provision of such access would not have occurred absent Fermi's agreement to the payment terms set forth therein.

31. The parties further negotiated and agreed that Bayonne's contemporaneous time-sheet records would conclusively establish the number of chargeable hours owed absent willful misconduct, that the existence or absence of a purchase order would have no effect on Fermi's payment obligations, and that all invoices would be payable net thirty (30) days.

32. Consistent with the parties' allocation of risk and responsibility, the First Amendment also provides that if Fermi abandoned its work prior to completing its obligations, the Daily Charge would continue to accrue until Bayonne completed its exercise of Seller's Completion Rights.

33. The negotiated access charge structure thus reflects the parties' deliberate allocation of the costs and consequences associated with extended site access and incomplete performance, and represents an enforceable component of the parties' bargained-for exchange.

**E. Fermi's Continued Access, Damage, and Abandonment**

34. Bayonne fully performed its obligations under the Agreement and the First Amendment by providing Fermi with extended, around-the-clock access to the Site and cooperating with Fermi's removal operations.

35. Fermi and its contractors continued removal operations at the Site through early January 2026.

36. Despite months of extended access and negotiated accommodations, Fermi failed to complete removal of all purchased equipment, failed to restore Bayonne's buildings, and failed to remove debris and waste materials as required by the Agreement.

37. Fermi's obligations to repair damage caused by its removal activities, restore Bayonne's buildings and Site to their pre-removal condition, remove all debris and waste materials, reimburse Bayonne for completion and remediation costs, and indemnify Bayonne and its affiliates for all resulting losses—including reasonable attorneys' fees—are expressly and repeatedly set forth in the parties' written Agreements, including, but not limited to, Sections 5.03(b), 5.03(c), 5.03(d), 5.03(f), and 6.03 of the Equipment Purchase Agreement, as amended by the First Amendment.

38. Despite these unambiguous contractual obligations, Bayonne was forced to undertake certain safety-critical restoration and remediation work before Fermi abandoned the Site in early January 2026.

39. At the time of abandonment, Bayonne provided Fermi with written punch-list communications identifying multiple outstanding obligations that required completion prior to project close-out, including unsecured active electrical wiring, fire-suppression deficiencies, and damaged safety-shower piping. *See e.g.*, December 23, 2025, January 9, 2026, and February 9, 2026, written punch-list communications, attached as *in globo* Exhibit C.

40. Fermi did not dispute responsibility for these items and yet failed to complete them before leaving the Site.

41. The unsecured electrical wiring and compromised fire-suppression and safety-shower systems created serious safety hazards at the Site.

**F. Bayonne's Completion Work, Invoicing, and Non-Payment**

42. Following Fermi's abandonment of the Site, Bayonne undertook efforts to promptly and diligently mitigate damages by making safety-critical repairs, coordinating qualified vendors, and working deliberately to complete the punch-list items left unresolved by Fermi, while tracking all associated costs in the ordinary course of business.

43. Bayonne's actions were necessary to restore safe operations at its active industrial facility and were undertaken to minimize further loss and disruption.

44. Through April 16, 2026, Bayonne has incurred a total of $8,457,652.47 in Fermi-related charges, consisting of (i) $4,252,799.09 in invoiced amounts that remain past due and (ii) $4,204,853.38 in additional costs invoiced on June 17, 2026, including punch-list work, 90-day cogen removal backcharges, Daily Charges, and late fees.[1]

45. In accordance with the Agreement and the First Amendment, Bayonne issued invoices to Fermi for Hourly Charges, Daily Charges, reimbursable services, restoration costs, and interest.

46. The First Amendment provides that all invoices for Chargeable Hours and Daily Charges are payable net thirty (30) days, that Bayonne's time-sheet records conclusively establish the charges absent willful misconduct, and that the existence or absence of a purchase order has no effect on Fermi's obligation to pay.

47. The Agreements do not condition payment on project completion, further approval, or final close-out, and do not permit Fermi to withhold payment for undisputed amounts.

---

[1] On June 17, 2026, Bayonne issued Invoice Nos. BA26060094 ($3,750,000.00) [Daily Charges], BA26060096 ($259,537.68) [punch-list work], BA26060097 ($50,165.30) [90-day cogen removal] and BA26060098 ($145,150.40) [late fees], each of which is due on July 17, 2026.

48. Between October 8, 2025, and January 2026, Bayonne issued multiple invoices to Fermi in the ordinary course of business reflecting charges incurred for extended Site access, restoration work, and reimbursable services.

49. Several invoices were expressly reviewed and approved by Fermi's authorized representative, including:

a. Invoice No. BA25090180, dated October 8, 2025, in the amount of $135,000.00;

b. Invoice No. BA25100093, dated October 14, 2025, in the amount of $80,280.87;

c. Invoice No. BA25100182, dated November 12, 2025, in the amount of $279,000.00; and

d. Invoice No. BA25110087, dated November 13, 2025, in the amount of $182,209.50.

50. With respect to the remaining invoices, Fermi received and retained them without timely objection, despite having full knowledge of the underlying work performed and costs incurred. The remaining unpaid invoices (without the backup that accompanied the transmittal to Fermi) are attached hereto as *in globo* Exhibit D.

51. In a voicemail on February 3, 2026, Fermi acknowledged the outstanding invoices and did not dispute responsibility for payment through December 23, 2025, but nevertheless failed to remit any payment.

52. Under the First Amendment, Daily Charges of $50,000.00 per day accrued until Bayonne completed its exercise of Seller's Completion Rights on April 16, 2026, and interest continues to accrue on all unpaid invoices.

53. As a result of Fermi's breach and non-fulfillment of its obligations, Bayonne has incurred attorneys' fees and enforcement costs that are recoverable pursuant to Section 6.03 of the Agreement, which expressly includes reasonable attorneys' fees within the scope of indemnified losses.

## CLAIMS FOR RELIEF

### Count I - Breach of Contract

54. Bayonne repeats and realleges the allegations in the foregoing paragraphs as if fully set forth herein.

55. Bayonne and Fermi entered into valid, binding, and enforceable written agreements consisting of the Equipment Purchase Agreement dated June 26, 2025 and the First Amendment effective October 23, 2025 (collectively, the "Agreements").

56. The Agreements were negotiated at arms' length between sophisticated commercial entities, each represented by counsel, and were supported by valid consideration, including Bayonne's sale of equipment, provision of extended site access, and performance of support and completion services.

57. Bayonne fully performed all obligations required of it under the Agreements, including:

a. Timely completing all required utility disconnections;

b. Providing site access as required by the Agreements and First Amendment;

c. Granting extended, twenty-four-hour access at Fermi's request; and

d. Performing restoration and remediation work following Fermi's abandonment of the Site.

58. Fermi materially breached the Agreements by, among other things:

a. Failing to remove all purchased equipment;

b. Failing to remove debris and waste materials;

c. Failing to repair damage caused by its removal activities;

d. Failing to restore Bayonne's buildings and Site as required;

e. Abandoning the Site prior to completion of its contractual obligations; and

f. Failing to pay Hourly Charges, Daily Charges, reimbursable services charges, restoration costs, and contractual interest.

59. As a direct and proximate result of Fermi's breaches, Bayonne has suffered damages, including but not limited to:

a. Unpaid invoices totaling $4,252,799.09 for contractually authorized charges;

b. Additional Fermi-related costs incurred through April 16, 2026, totaling $4,204,853.38, which were invoiced on June 17, 2026, and are recoverable under the Agreements; and

c. Contractual interest on all unpaid invoices.

60. Bayonne has further incurred reasonable attorneys' fees and litigation costs enforcing Fermi's contractual obligations, which fees and costs are recoverable pursuant to Section 6.03 of the Agreement.

**Count II – Account Stated**

61. Bayonne repeats and realleges the allegations in the foregoing paragraphs as if fully set forth herein.

62. From at least October 2025 through January 2026, Bayonne and Fermi engaged in a course of dealing establishing a debtor-creditor relationship, pursuant to which Bayonne rendered services, granted extended site access, incurred restoration and remediation costs, and invoiced Fermi for amounts due under the Agreements.

63. Following a course of dealing in which Fermi previously received, approved, and paid Bayonne's invoices (see ¶ 49, *supra*), Bayonne issued the following invoices reflecting charges that were rendered, accepted, and remain unpaid:

a. Invoice No. BA25110183, dated December 9, 2025, in the amount of $535,000.00, for Hourly Charges and Daily Charges;

b. Invoice No. BA25120100, dated December 17, 2025, in the amount of $700,000.00, for Daily Charges;

c. Invoice No. BA25120098, dated December 18, 2025, in the amount of $419,168.06, for reimbursable restoration costs;

d. Invoice No. BA25120104, dated January 2, 2026, in the amount of $700,000.00, for Daily Charges;

e. Invoice No. BA25120183, dated January 9, 2026, in the amount of $141,333.43, for additional restoration costs;

f. Invoice No. BA26010100, dated January 22, 2026, in the amount of $600,000.00, for Daily Charges;

g. Invoice No. BA26010101, dated February 3, 2026, in the amount of $7,297.60, for contractual late-payment charges; and

h. Invoice No. BA26010105, dated February 3, 2026, in the amount of $1,150,000.00, for Daily Charges through January 31, 2026.

64. By expressly approving certain invoices, failing to object to others within the contractual payment period, and retaining the benefit of extended Site access and completed restoration work, Fermi expressly and impliedly assented to the correctness of the amounts stated and promised to pay the balances due.

65. All invoices were transmitted to Fermi in the ordinary course of business and were due no later than thirty (30) days after their respective invoice dates.

66. Fermi received and retained the invoices, failed to object to them within the contractual payment period, and did not timely dispute either the amounts billed or the basis for the charges.

67. In fact, Fermi's Chief Power Supply Officer, Larry Kellerman, expressly acknowledged certain of the debts.

68. By approving certain invoices, failing to object to others, and continuing to accept the benefits of extended site access and remediation work performed by Bayonne, Fermi expressly and impliedly assented to the correctness of the amounts stated and promised to pay the balances due.

69. As of the filing date, the total amount due and owing from Fermi to Bayonne is no less than $8,457,652.47, including $4,252,799.09 in outstanding invoices past due.

70. Despite repeated demands, Fermi has failed and refused to pay the stated balance.

71. Bayonne is entitled to judgment on the account stated for all sums due, together with contractual interest, costs, and such further relief as the Court deems just and proper.

**Count III – Contractual Indemnification**

72. Bayonne repeats and realleges the allegations in the foregoing paragraphs as if fully set forth herein.

73. The agreements contain express indemnification provisions pursuant to which Fermi agreed to indemnify, defend, and hold harmless Bayonne and its affiliates from and against any and all "Losses," including reasonable attorneys' fees, arising out of or resulting from, among other things, any breach or non-fulfillment of Fermi's covenants or obligations under the Agreements.

74. Under Section 6.03(g) of the Agreements, Fermi expressly agreed to indemnify Bayonne for Losses arising from any breach or failure to perform its obligations, including obligations relating to (a) completion of the Pick Up, (b) restoration and cleanup of Bayonne's site, and (c) payment of invoiced charges, Chargeable Hours, reimbursable costs, and Daily Charges.

75. Fermi breached the Agreements by abandoning the Pick Up, failing to complete required restoration and cleanup work, and failing to pay invoices that the Parties expressly agreed were correct, final, and payable, including invoices for Chargeable Hours and Daily Charges, reimbursable services, and Daily Charges accruing after abandonment.

76. As a direct and foreseeable result of Fermi's breaches, Bayonne has incurred Losses subject to indemnification under the Agreements, including but not limited to unpaid invoices, site remediation and completion costs, Daily Charges continuing after abandonment, and attorneys' fees and costs incurred to enforce Fermi's contractual obligations.

77. Bayonne has complied with all conditions precedent to recovery of indemnification or such conditions have been waived or excused.

78. Pursuant to the express indemnification provisions of the Agreements, Fermi is obligated to indemnify and reimburse Bayonne for all such Losses.

## JURY DEMAND

Bayonne hereby demands trial by jury on all issues so triable.

**WHEREFORE,** Bayonne respectfully requests the Court enter judgement as follows:

(1) Awarding Bayonne all damages caused by Fermi's breaches of the Equipment Purchase Agreement and First Amendment in an amount of no less than $8,457,652.47, representing charges incurred through April 16, 2026, together with additional late fees accruing thereafter;

(2) Pre-judgment interest at the rate specified in the Agreements, or alternatively at the maximum rate permitted by New Jersey law;

(3) Post-judgment interest as allowed by New Jersey law;

(4) Awarding Bayonne's reasonable attorneys' fees and litigation costs incurred in enforcing the Agreements and pursuing this action, as expressly authorized by the terms of the Agreements; and

(5) Such other and further relief as the Court deems just and proper.

Respectfully submitted,

By: *s/ Michael Anthony Shaw*

Michael Anthony Shaw
tshaw@joneswalker.com
JONES WALKER LLP
11 N. Water St., Ste. 1200
Mobile, Alabama 36602
Tel.: (251) 462-1414

*Counsel for Bayonne Plant Holding, L.L.C.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 29, 2026, I filed the foregoing pleading using the court's CM/ECF system, which will cause this pleading to be served on all counsel of record.

*s/ Michael Anthony Shaw*