**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BAYONNE PLANT HOLDING, L.L.C.,<br><br>Plaintiff,<br><br>v.<br><br>FERMI EQUIPMENT HOLDCO, LLC,<br><br>Defendant. | Civil Action No. 2:26-cv-07904 (JXN) (JBC) |

**OPPOSITION TO MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**


I. PRELIMINARY STATEMENT ....1

II. FACTUAL BACKGROUND ....2

A. THE AGREEMENTS ....2

B. FERMI'S ABANDONMENT AND BAYONNE'S COMPLETION WORK ....3

III. LEGAL STANDARD ....5

IV. ARGUMENT ....6

A. FERMI MISCHARACTERIZES THE AGREEMENTS AND THE COMPLAINT. ....7

B. THE COMPLAINT PLAUSIBLY ALLEGES ENTITLED TO DAILY CHARGES AND SELLER'S COMPLETION RIGHTS DAMAGES. ....11

C. THE MOTION DEPENDS ON A CONTRACT INTERPRETATION DISPUTE THAT CANNOT BE RESOLVED UNDER RULE 12(B)(6). ....13

D. COUNTS II AND III SURVIVE BECAUSE THE COMPLAINT PLAUSIBLY ALLEGES UNDERLYING CONTRACTUAL LIABILITY. ....15

E. DISMISSAL WITH PREJUDICE IS UNWARRANTED. ....16

V. CONCLUSION ....17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Express Nat'l Bank v. ZMZ Glob., Inc.*,
No. 25-cv-18780, 2026 U.S. Dist. LEXIS 118281 (D.N.J. May 28, 2026)....16

*Apalucci v. Agora Syndicate*,
145 F.3d 630 (3d Cir. 1998)....10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....5, 6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....5

*Calabria Ristorante, Inc. v. Ruggiero Seafood, Inc.*,
No. 21-3712 (JXN) (AME), 2025 U.S. Dist. LEXIS 192949 (D.N.J. Sept. 30, 2025)....16

*E.H. Yachts, LLC v. B&D Boatworks, Inc.*,
No. 06-164 (RBK), 2006 U.S. Dist. LEXIS 78418 (D.N.J. Oct. 27, 2006)....13

*Fowler v. UPMC Shadyside*,
578 F.3d 203 (3d Cir. 2009)....6

*Globe Motor Co. v. Igdalev*,
225 N.J. 469 (2016)....7

*Malleus v. George*,
641 F.3d 560 (3d Cir. 2011)....5

*Nissan Motor Acceptance Corp. v. Infiniti of Englewood, LLC*,
Civil Action No. 18-17228, 2020 U.S. Dist. LEXIS 251131, at *17-19 (D.N.J. July 14, 2020)....15

*Sandoz Inc. v. Sam's West, Inc.*,
Civil Action No. 25-02001 (GC) (RLS), 2026 U.S. Dist. LEXIS 13627, at *14-15 (D.N.J. Jan. 26, 2026)....14

*Teva Pharmaceuticals USA, Inc. v. Biogen International GmbH*,
753 F. Supp. 3d 358 (D. N.J. 2024)....14

*United States ex rel. Schumann v. AstraZeneca Pharms. L.P.*,
769 F.3d 837 (3d Cir. 2014)....17

*Vega v. Iveley, LLC*,
Civil Action No. 25-03769 (JXN)(JRA), 2026 U.S. Dist. LEXIS 143243 (D.N.J. June 29, 2026) ....................5, 6

*Vita Grp. LLC v. Compass Grp. USA, Inc.*,
Civil Action No. 21-16291, 2022 U.S. Dist. LEXIS 77240 (D.N.J. Apr. 28, 2022) ....................17

*Walstein v. Schuler*,
Civil Action No. 25-14491 (MAS) (RLS), 2026 U.S. Dist. LEXIS 118438 (D.N.J. May 28, 2026) ....................5, 6

*Woytas v. Greenwood Tree Experts, Inc.*,
237 N.J. 501 (2019) ....................7

**Other Authorities**

FED. R. CIV. P. 8....................11

FED. R. CIV. P. 12(a) ....................6

FED. R. CIV. P. 12(b)(6) .................... *passim*

FED. R. CIV. P. 15(a)....................17

Judge Neals, Rules and Procedure, Section IV.A ....................6

## I. Preliminary Statement

This action arises from Fermi Equipment Holdco, LLC's ("Fermi") purchase of certain power generation equipment from Bayonne Plant Holding, L.L.C. ("Bayonne") for $18 million and Fermi's subsequent failure to complete the removal work required by the parties' agreements. On June 26, 2025, the parties entered into an Equipment Purchase Agreement (the "EPA") [ECF No. 1-2], and on October 23, 2025, they executed a First Amendment to Equipment Purchase Agreement (the "First Amendment") [ECF No. 1-3] (collectively, the "Agreements"). Complaint ¶¶ 6, 18 [ECF No. 1].

Despite Fermi's efforts to minimize the issue, the Purchased Assets[1] were not simply standalone equipment sitting in an empty warehouse waiting for pick up. Rather, they consisted of massive power generation equipment located within Bayonne's active industrial facility, and removing that equipment required months of dismantling, demolition, rigging, and construction activities within Bayonne's buildings and operating terminal. As a result, the Agreements imposed extensive obligations relating to repairs, restoration, cleanup, reimbursement of completion costs, and indemnification arising from Fermi's removal activities.

Following execution of the Agreements, Fermi undertook the extensive removal operations at Bayonne's active industrial facility in Bayonne, New Jersey. When Fermi failed to complete its work within the original contractual deadline, the parties negotiated the First Amendment, which extended Fermi's removal period, granted expanded twenty-four-hour access to the Site, established Daily Charges for continued occupancy of the Site, and provided Bayonne contractual remedies in the event Fermi abandoned the project. Complaint ¶¶ 16-33.

---

[1] Unless otherwise defined herein, all capitalized terms have the same meaning as defined in the EPA annexed to the Complaint [ECF No. 1-2].

Despite receiving those accommodations, Fermi failed to complete removal of the purchased equipment, failed to remove debris and waste materials, failed to repair damage caused during its removal activities, and ultimately abandoned the Site before completing its contractual obligations. *Id.* at ¶¶ 36-43. Bayonne then undertook completion and remediation work pursuant to its contractual rights, issued invoices for the resulting costs and charges, and repeatedly sought payment from Fermi. *Id.* at ¶¶ 42-52. Fermi nevertheless refused to pay.

On August 24, 2026, Fermi filed a Motion to Dismiss in Part Pursuant to FED. R. CIV. P. 12(b)(6) seeking dismissal of substantial portions of the Complaint by reducing this dispute to a single contractual provision governing temporary modifications to Bayonne's buildings and then asking the Court to adopt Fermi's preferred interpretation of that provision (the "Motion").[2] The Complaint, however, alleges breaches arising under multiple provisions of the Agreements governing repairs, restoration, cleanup obligations, Seller's Completion Rights, Daily Charges, reimbursement of completion costs, and indemnification. *Id.* at ¶ 37.

At bottom, the Motion presents a contract interpretation dispute, not a pleading deficiency. Because Bayonne plausibly alleges breaches of multiple contractual obligations and resulting damages, the Motion should be denied.

## II. Factual Background

### A. The Agreements.

On June 26, 2025, Bayonne and Fermi entered into the EPA pursuant to which Bayonne agreed to sell certain power-generation equipment to Fermi for $18,000,000. Complaint ¶ 6. The

---

[2] Fermi does not dispute that "[i]t agreed to repair any damage it caused and to clean up afterward" (ECF No. 31-1 at 7). Instead, at this motion to dismiss stage, it seeks to improperly interpret whether its actions constitute modifications, and further reads its clean up obligation out of 5.03(d).

Purchased Assets consisted of massive power generation equipment located throughout Bayonne's active industrial facility. The parties anticipated that removing the equipment would require extensive dismantling, demolition, rigging, and construction activities within Bayonne's buildings and operating terminal and would necessarily impact portions of Bayonne's Site and infrastructure. Accordingly, the EPA made Fermi solely responsible for removing the purchased equipment from Bayonne's Site and imposed obligations relating to repairs, restoration, cleanup, indemnification, and reimbursement of costs arising from Fermi's removal activities. *Id.* at ¶¶ 7-10.

Following Bayonne's timely completion of the required utility disconnections, Bayonne issued a Removal Commencement Notice on July 25, 2025, authorizing Fermi to commence removal operations. *Id.* at ¶¶ 11-13. Fermi thereafter undertook extensive removal activities at the Site. *Id.* at ¶¶ 14-15.

As the original removal period expired, Fermi requested additional time and expanded access rights in order to complete its work. *Id.* at ¶¶ 16-18. Effective October 23, 2025, the parties executed the First Amendment, which extended Fermi's deadline to complete the Pick Up, restoration work, and cleanup obligations, granted Fermi expanded twenty-four-hour-per-day access to the Site, established Hourly Charges and Daily Charges in exchange for that access, and created Seller's Completion Rights in the event Fermi abandoned the project before completing its obligations. *Id.* at ¶¶ 18, 22-33.

**B. Fermi's abandonment and Bayonne's completion work.**

Despite obtaining additional time and expanded access, Fermi failed to complete removal of all purchased equipment, failed to restore Bayonne's buildings, and failed to remove debris and waste materials as required by the Agreements. Complaint ¶ 36.

As Fermi's work remained incomplete, Bayonne provided Fermi with written communications identifying numerous outstanding obligations requiring completion before

project closeout, including unsecured active electrical wiring, fire-suppression deficiencies, damaged safety-shower piping, and other safety-related conditions resulting from Fermi's removal activities. *Id.* at ¶ 39; Remaining Punch List Items, ECF No. 1-4. Fermi did not dispute responsibility for these items but nevertheless failed to complete them. Complaint ¶ 40.

The punch-list items were not minor or cosmetic deficiencies. They reflected physical alterations of the structure of the Site and incomplete restoration work resulting from Fermi's removal activities. By way of example, Bayonne identified unrepaired duct penetrations between the gas turbine unit and HRSG that remained open following removal of the Purchased Assets:





*See* Remaining Punch List Items 5-6, ECF No. 1-4 p. 5. By way of further example, Bayonne also identified incomplete restoration work relating to the Site's natural-gas heaters. The punch list reflects that Fermi had reinstalled one heater but had inexplicability not reinstalled the second. *Compare id.* Item 13 (reflecting status of reinstallation of natural gas heater in Building 1 as "complete") *with id.* Item 14 (reflecting status of reinstallation of natural gas heater in Building 2 as "incomplete").

The unresolved conditions created significant safety concerns at Bayonne's active operating industrial facility. Complaint ¶ 41. Following Fermi's abandonment of the Site in early January 2026, Bayonne undertook completion and remediation work to address those conditions, restore safe operations, and mitigate further damages. *Id.* at ¶¶ 42-43. Bayonne then invoiced Fermi for Hourly Charges, Daily Charges, reimbursable services, restoration costs, and other amounts due under the Agreements. *Id.* at ¶¶ 44-50. Although Fermi approved certain invoices, retained others without timely objection, and later acknowledged outstanding obligations, it failed to remit payment. *Id.* at ¶¶ 49-51. Bayonne alleges that Daily Charges continued to accrue until completion of its exercise of Seller's Completion Rights on April 16, 2026. *Id.* at ¶ 52.

After Fermi failed to satisfy its obligations under the Agreements and refused to pay the invoiced amounts due, Bayonne filed this action to recover the damages resulting from Fermi's breaches. *Id.* at ¶¶ 53-78.

## III. Legal Standard

To survive a motion to dismiss under FED. R. CIV. P. 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

"A district court conducts a three-part analysis when considering a motion to dismiss under Rule 12(b)(6)." *Walstein v. Schuler*, Civil Action No. 25-14491 (MAS) (RLS), 2026 U.S. Dist. LEXIS 118438, at *4 (D.N.J. May 28, 2026) (citing *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011)). *First*, the court "identifies 'the elements a plaintiff must plead to state a claim.'" *Vega v. Iveley, LLC*, Civil Action No. 25-03769 (JXN)(JRA), 2026 U.S. Dist. LEXIS 143243, at *5-6

(D.N.J. June 29, 2026) (quoting *Iqbal*, 556 U.S. at 675). *Second*, the court identifies "all of the plaintiff's well-pleaded factual allegations, accept[s] them as true, and 'construe[s] the complaint in the light most favorable to the plaintiff.'" *Walstein*, 2026 U.S. Dist. LEXIS 118438, at *4 (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)). "The court can discard bare legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff." *Id.* at *5. *Third*, the court must consider "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief." *Vega*, 2026 U.S. Dist. LEXIS 143243, at *6 (quoting *Fowler*, 578 F.3d at 211).

## IV. Argument

As an initial matter, Fermi filed the Motion untimely. Fermi's Rule 12(a) deadline expired on July 29, 2026. Fermi did not submit its pre-motion letter until July 30, 2026, after that deadline had already passed. This Court's Individual Rules and Procedures provide that submission of a pre-motion letter tolls the time to answer or otherwise respond to a complaint, but the Rules do not authorize an untimely pre-motion submission to revive a deadline that has already expired. *See* Judge Neals, Rules and Procedure, Section IV.A. Thus, Fermi's July 30, 2026, letter did not toll any deadline at all.

Moreover, even assuming the July 30 pre-motion letter somehow revived and extended the already expired July 29 deadline to July 30 and then tolled the July 20 deadline and assuming further that the Court's August 11, 2026, Order afforded Fermi the benefit of the seven-day extension contemplated by the Court's procedures, the Motion was due no later than August 18, 2026. *See id.* Fermi did not file its motion until August 24, 2026. Accordingly, the Motion is untimely under any interpretation and should be denied on that basis alone.

Even if the Court considers the Motion on its merits, dismissal is unwarranted. Fermi seeks to transform a straightforward contract interpretation dispute into a pleading deficiency by

recasting Bayonne's Complaint as though it asserted a single claim arising exclusively under Section 5.03(c) of the EPA. The Complaint does no such thing. Bayonne alleges multiple independent contractual obligations, multiple independent breaches, and resulting damages arising under Sections 5.03(b), 5.03(c), 5.03(d), 5.03(f), and 6.03 of the Agreements.

The Motion fails for four reasons. *First*, Fermi mischaracterizes the Agreements and the Complaint by treating Section 5.03(c) as the exclusive source of Bayonne's claims, although Bayonne plausibly alleges breaches of multiple independent contractual obligations. *Second*, the Complaint plausibly alleges entitlement to Daily Charges and damages arising from Bayonne's exercise of Seller's Completion Rights under Sections 5.03(d) and 5.03(f). *Third*, the Motion depends on a disputed interpretation of the Agreements that cannot be resolved under Rule 12(b)(6). *Fourth*, Counts II and III survive because Bayonne plausibly alleges the underlying contractual liability on which those claims depend. In any event, if the Court identifies a pleading deficiency, Bayonne should be granted leave to amend.

### A. Fermi mischaracterizes the Agreements and the Complaint.

The Motion rests on a fundamental premise: that Bayonne's claims rise or fall solely on Section 5.03(c) of the EPA and the procedures governing temporary modifications. The Agreements and the Complaint demonstrate otherwise.

To state a claim for breach of contract, a plaintiff must allege (1) "the parties entered into a contract containing certain terms;" (2) "plaintiff did what the contract required [the plaintiff] to do;" (3) "defendant did not do what the contract required [the defendant] to do;" and (4) "defendant's breach, or failure to do what the contract required, caused a loss to the plaintiff." *Woytas v. Greenwood Tree Experts, Inc.*, 237 N.J. 501, 512 (2019) (quoting *Globe Motor Co. v. Igdalev*, 225 N.J. 469, 482 (2016)).

The Complaint easily satisfies that standard. Bayonne alleges the existence of the Agreements. Complaint ¶¶ 6, 18. Bayonne further alleges that it performed its obligations under those Agreements, including completing the required utility disconnections, providing site access, granting the expanded access rights requested by Fermi, and undertaking completion and remediation work following Fermi's abandonment of the Site. *Id.* at ¶¶ 11-13, 34, 57. The Complaint alleges that Fermi's obligations arise under "Sections 5.03(b), 5.03(c), 5.03(d), 5.03(f), and 6.03" of the parties' Agreements. *Id.* at ¶ 37. It further alleges that Fermi breached those obligations by, among other things, "[f]ailing to remove all purchased equipment," "[f]ailing to remove debris and waste materials," "[f]ailing to repair damage caused by its removal activities," "[f]ailing to restore Bayonne's buildings and Site as required," "[a]bandoning the Site prior to completion of its contractual obligations," and "[f]ailing to pay Hourly Charges, Daily Charges, reimbursable services charges, restoration costs, and contractual interest." *Id.* at ¶ 58. Finally, Bayonne alleges resulting damages exceeding $8 million, together with interest, attorneys' fees, and other losses recoverable under the Agreements. *Id.* ¶¶ 44, 53, 59, 69, 76. At a minimum, these allegations plausibly state a claim for breach of contract under New Jersey law.

The Agreements, which Bayonne attached to the Complaint, support those allegations. *First*, Section 5.03(b) provides that, during the removal process, "Buyer shall, at the Buyer's expense, promptly repair any damage to Seller's Site or any equipment therein caused by Buyer's removal activities." EPA, § 5.03 [ECF No. 1-2]. That obligation exists independently of Section 5.03(c) and contains none of the prerequisites on which the Motion relies. *Second*, Section 5.03(c) provides that Buyer may, with Seller's prior written consent, "make temporary modifications to the structure of Seller's buildings at Seller's Site to the extent reasonably necessary to access and remove the Purchased Assets." *Id.* at § 5.03. The same provision further states that Buyer "must,

however, restore Seller's buildings to their condition prior to the modification once Buyer completes removal of the Purchased Assets." *Id.* Thus, Section 5.03(c) expressly creates restoration obligations arising from Buyer's removal activities. *Third*, Section 5.03(d) separately addresses cleanup obligations. In its original form, that provision states that if Buyer "fails to clean up and remove any resulting debris or waste materials at Seller's Site, Seller may, without payment to Buyer, dispose of the remaining unremoved Purchased Assets and any debris or waste materials left by Buyer, and Buyer shall reimburse Seller for any resulting costs incurred." *Id.* at § 5.03(d). Thus, the EPA separately recognizes obligations concerning debris removal, waste removal, and reimbursement of Seller's completion costs.

The First Amendment confirms that Section 5.03(d) encompasses multiple categories of "work." As amended, Section 5.03(d) required Fermi to complete "the Pick Up, the restoration work required by Section 5.03(c), and the clean up of Seller's Site by December 31, 2025." First Amendment, § 5.03(d) [ECF No. 1-3]. The parties' use of three separate obligations connected by the conjunctive "and" demonstrates that the Agreements do not treat restoration work as synonymous with only Section 5.03(c) "work" as Fermi contends; rather, if any of the work as defined in Section 5.03(d) remains outstanding, including either the Pick Up, Section 5.03(c), or cleanup work, Bayonne is entitled to exercise its "Seller's Completition Rights." And, pursuant to Section 5.03(f), as amended, Seller (Bayonne) is entitled to recover the Daily Charge until such time as Seller completes its work under "Seller's Completition Rights," *i.e.* the work identified in Section 5.03(d) that is *inclusive of work called for by Section 5.03(c)*.

The same is true of the Daily Charge. Beginning November 28, 2025, Buyer agreed to pay "$50,000 per day or partial day through completion of Buyer's obligations under Section 5.03(d)." First Amendment, § 5.03(f) [ECF No. 1-3]. If Buyer abandons its work before completing those

obligations, "the Daily Charge shall continue to accrue until Seller completes its exercise of Seller's Completion Rights." *Id.* The Daily Charge therefore turns on completion of all obligations under Section 5.03(d), not solely the restoration work referenced in Section 5.03(c).

Finally, Section 6.03(g) requires Buyer to indemnify Seller against losses arising from "any breach or non-fulfillment of any covenant, agreement, or obligation to be performed by Buyer pursuant to this Agreement." EPA, § 6.03(g) [ECF No. 1-2]. That obligation likewise extends well beyond the narrow restoration theory advanced in the Motion.

The Complaint tracks these provisions. Bayonne alleges that Fermi failed to complete removal activities, failed to remove debris and waste materials, failed to repair damage caused during removal operations, abandoned the Site before completing its obligations, and failed to reimburse Bayonne for resulting completion and remediation costs. Complaint ¶¶ 36-58. Those allegations correspond directly to obligations expressly identified throughout Sections 5.03(b), 5.03(c), 5.03(d), 5.03(f), and 6.03 of the Agreements.

The Motion improperly treats the absence of specific allegations regarding a written modification request, Estimated Restoration Cost, Restoration Deposit, or written consent as a pleading defect.[3] But Bayonne expressly alleges that Fermi failed to restore Bayonne's buildings and Site as required by the Agreements. Complaint ¶¶ 36-38, 58(d). Bayonne further alleges that

---

[3] Stated differently, Fermi attempts to seize upon its own failure to follow a purported process (*i.e.*, its own failure to request permission prior to making modifications) to excuse its subsequent performance of its contractual obligation to "restore Seller's buildings to their condition prior to the modification once Buyer completes removal of the Purchased Assets." EPA, § 5.03 [ECF No. 1-2]. Fermi cannot rely on its own failure to comply with the procedures governing modifications as a means of avoiding the restoration obligations that arose from those modifications. *See Apalucci v. Agora Syndicate*, 145 F.3d 630, 634 (3d Cir. 1998) ("[W]hen one party to a contract unilaterally prevents the performance of a condition upon which his own liability depends, the culpable party may not then capitalize on that failure."). To hold otherwise would permit Fermi to escape contractual liability by pointing to its own noncompliance with the Agreements.

Fermi abandoned the Site leaving numerous outstanding items requiring remediation, including unsecured electrical wiring, fire-suppression deficiencies, damaged safety-shower systems, wall penetrations, duct penetrations, and other conditions arising from Fermi's removal activities. *Id.* at ¶¶ 39-43; ECF No. 1-4. These allegations plausibly support Bayonne's claim that restoration obligations existed and remained unfulfilled. At the pleading stage, FED. R. CIV. P. 8 does not require Bayonne to prove every factual issue that may ultimately bear on the operation of Section 5.03(c). Whether Fermi undertook temporary modifications, whether Section 5.03(c)'s procedures were followed, and the extent to which Bayonne's completion work falls within Section 5.03(c) present factual and contractual questions that cannot be resolved on a Rule 12(b)(6) motion.

Accordingly, the Motion does not identify a pleading deficiency. Rather, it rewrites both the Agreements and the Complaint as though Bayonne asserted a single claim arising exclusively under Section 5.03(c). Because neither the Agreements nor the Complaint support that characterization, the Motion should be denied.

**B. The Complaint plausibly alleges entitled to Daily Charges and Seller's Completion Rights damages.**

The Motion further contends that Bayonne cannot recover Daily Charges allegedly accruing after Fermi abandoned the Site because any continuing Daily Charges necessarily depend upon restoration work performed pursuant to Section 5.03(c). *See* Motion, p. 10 [ECF No. 31-1]. The Agreements do not support that interpretation or, at a minimum, this issue cannot be resolved at the motion to dismiss stage. *See supra* IV.C.

Section 5.03(d), as amended, required Fermi to use commercially reasonable efforts toward completing certain work, defined to include three broad scopes of "work": "the Pick Up, the restoration work required by Section 5.03(c), and the clean up of Seller's Site by December 31, 2025." First Amendment, § 5.03(d) [ECF No. 1-3]. Thus, Section 5.03(d) identifies three separate

categories of "work," the Pick Up, restoration work, and cleanup of Seller's Site, all of which must be performed by Buyer, failing which seller may self-perform. The Section 5.03(f) Daily Charge provision that serves as the foundation for the Complaint, as pleaded, is tied to completion of all of the obligations arising under Section 5.03(d), not merely restoration work under Section 5.03(c). Thus, Fermi's premise is fundamentally wrong.

Specifically, beginning November 28, 2025, Fermi agreed to pay "$50,000 per day or partial day through completion of Buyer's obligations under Section 5.03(d)." *Id.* at § 5.03(f). The First Amendment further provides that, "[i]f Buyer abandons its work prior to completion of Buyer's obligations under Section 5.03(d), the Daily Charge shall continue to accrue until Seller completes its exercise of Seller's Completion Rights." *Id.* By its plain language, the continuing Daily Charge is triggered by abandonment before completion of Fermi's obligations under Section 5.03(d), not solely by the existence (or not) of restoration work under Section 5.03(c).

The First Amendment's definition of "Seller's Completion Rights" further refutes Fermi's position. Upon abandonment, Bayonne was entitled to "(i) dispose of the remaining unremoved Purchased Assets and any debris or waste materials left by Buyer and (ii) perform or complete the restoration of Seller's Site as required by Section 5.03(c)." *Id.* at 5.03(d). These activities are collectively defined as "Seller's Completion Rights." Thus, Seller's Completion Rights are not limited to restoration work. They expressly include disposal of unremoved Purchased Assets and debris or waste materials left by Fermi.

The Complaint plausibly alleges precisely those circumstances. Bayonne alleges that Fermi "failed to complete removal of all purchased equipment, failed to restore Bayonne's buildings, and failed to remove debris and waste materials as required by the Agreement." Complaint ¶ 36. The Complaint further supplied specific examples of such breaches. *Id.* at ¶¶ 39-43; ECF No. 1-4.

Bayonne further alleges that, following Fermi's abandonment of the Site, Bayonne undertook completion and remediation work, incurred resulting costs, and completed its exercise of Seller's Completion Rights on April 16, 2026. Complaint ¶¶ 42-44, 52.

Accepting those allegations as true, Bayonne has plausibly alleged entitlement to Daily Charges under the express terms of the First Amendment. Fermi's argument depends on reading limitations into Sections 5.03(d) and 5.03(f) that do not appear in the Agreement, while simultaneously reading out the provisions expressly authorizing Bayonne to exercise Seller's Completion Rights and recover the resulting costs. At a minimum, the Agreements do not unambiguously limit Daily Charges to periods during which Bayonne was performing restoration work under Section 5.03(c), and Bayonne's interpretation is therefore plausible.

**C. The Motion depends on a contract interpretation dispute that cannot be resolved under Rule 12(b)(6).**

Having failed to identify an actual pleading deficiency, the Motion ultimately asks the Court to adopt Fermi's preferred interpretation of the Agreements and reject Bayonne's competing interpretation. That is not a proper basis for dismissal under Rule 12(b)(6). *E.H. Yachts, LLC v. B&D Boatworks, Inc.*, No. 06-164 (RBK), 2006 U.S. Dist. LEXIS 78418 (D.N.J. Oct. 27, 2006) (finding that interpretation of contractual provisions was inappropriate in a motion to dismiss).

Fermi repeatedly asserts that Section 5.03(c) is the exclusive source of any restoration obligation, that Bayonne's damages necessarily depend upon satisfying the procedural requirements set forth in that provision, and that the Agreements do not support Bayonne's understanding of Fermi's obligations. Those arguments, however, concern the meaning and operation of the Agreements themselves, not whether Bayonne has plausibly alleged a claim.

The Complaint alleges that the Agreements imposed obligations requiring Fermi to remove Purchased Assets, repair damage caused by its removal activities, complete restoration work,

remove debris and waste materials, reimburse Bayonne for costs incurred in exercising Seller's Completion Rights, pay Daily Charges, and indemnify Bayonne for resulting losses. Complaint ¶¶ 37, 58, 73-78. Fermi advances a narrower interpretation of those same provisions. The parties therefore present competing interpretations of the Agreements, not a pleading defect.

Courts in this District routinely reject efforts to resolve such contractual disputes through a Rule 12(b)(6) motion. In *Sandoz Inc. v. Sam's West, Inc.*, the court rejected a motion to dismiss premised on the defendant's interpretation of the parties' contract, holding that "questions of contract interpretation should not be decided without the benefit of discovery and a full evidentiary record" and concluding that the defendant's arguments were "better suited for summary judgment." Civil Action No. 25-02001 (GC) (RLS), 2026 U.S. Dist. LEXIS 13627, at *14-15 (D.N.J. Jan. 26, 2026) (internal citations omitted). Likewise, in *Teva Pharmaceuticals USA, Inc. v. Biogen International GmbH*, the court refused to dismiss a breach claim where the defendant's motion depended upon its preferred interpretation of the contract, explaining "a party cannot secure the dismissal of a breach of contract claim based on an erroneous interpretation of the relevant part of the Contract." 753 F. Supp. 3d 358, 363 (D. N.J. 2024).

The same principle applies here. At minimum, Bayonne's interpretation is reasonable. The Agreements contain multiple provisions governing Fermi's removal activities, Bayonne's rights upon Fermi's abandonment of the Site, reimbursement of Bayonne's resulting costs, Daily Charges, and indemnification. With respect to each of those provisions, Bayonne has advanced a reading that is consistent with both the language of the Agreements and the allegations of the Complaint. Whether Fermi's competing interpretation ultimately prevails is a question for a later stage of the litigation that involves both an interpretation of the Agreements and disputed facts.

The parties' course of performance further confirms the existence of a factual and contractual dispute that cannot be resolved on a motion to dismiss. Bayonne alleges that it provided Fermi with communications identifying numerous outstanding items requiring completion before project closeout, including unsecured electrical wiring, fire-suppression deficiencies, damaged safety-shower systems, wall penetrations, duct penetrations, and other conditions resulting from Fermi's removal activities. Complaint ¶¶ 39-40; ECF No. 1-4. Bayonne further alleges that Fermi "did not dispute responsibility for these items." *Id.* at ¶ 40.

Those allegations are significant because they demonstrate that, during performance, Fermi did not take the position it now advances in this litigation. Rather than contend that these matters fell outside the scope of its contractual obligations, Fermi allegedly acknowledged responsibility and simply failed to complete the work. At a minimum, that course of performance creates factual issues concerning the parties' understanding and application of the Agreements. As recognized in *Nissan Motor Acceptance Corp. v. Infiniti of Englewood, LLC*, allegations concerning the parties' conduct during performance may preclude dismissal where the parties dispute the meaning and operation of contractual provisions. Civil Action No. 18-17228, 2020 U.S. Dist. LEXIS 251131, at *17-19 (D.N.J. July 14, 2020). The same is true here.

Accordingly, the Motion presents exactly the type of contractual interpretation dispute that courts routinely decline to resolve under Rule 12(b)(6). Because Bayonne has plausibly alleged breaches under its reasonable interpretation of the Agreements, dismissal is unwarranted.

**D. Counts II and III survive because the Complaint plausibly alleges underlying contractual liability.**

Fermi's challenge to Counts II and III depends entirely upon its assertion that Bayonne lacks a contractual basis for restoration costs and Daily Charges. Because that premise is incorrect, its derivative attacks on Counts II and III necessarily fail.

Count II alleges that Bayonne rendered invoices reflecting Hourly Charges, Daily Charges, restoration costs, reimbursable services, and related charges arising under the Agreements, that Fermi received and retained those invoices, that Fermi approved certain invoices and failed to timely object to others, and that Fermi nevertheless failed to pay the amounts due. Complaint ¶¶ 62-70. Those allegations adequately state a claim for account stated.[4]

Count III similarly alleges that Section 6.03 requires Fermi to indemnify Bayonne for losses resulting from Fermi's "breach or non-fulfillment" of its contractual obligations and that Bayonne incurred such losses as a result of Fermi's abandonment, failure to complete required work, and failure to pay contractually required charges. Complaint ¶¶ 73-78. Those allegations likewise state a plausible indemnification claim.[5]

Accordingly, Counts II and III survive for the same reasons Count I survives.

**E. Dismissal With Prejudice Is Unwarranted.**

Finally, even if the Court were to identify a pleading deficiency, dismissal with prejudice would be inappropriate. Fermi simultaneously argues that Bayonne failed to plead sufficient facts concerning Section 5.03(c) while also asserting that amendment would be futile because the alleged defect lies in the Agreements themselves. Those positions cannot be reconciled.

---

[4] "To state a claim for accounts stated, a plaintiff must allege: (1) an account was stated between the parties; (2) the defendant owed plaintiff an amount due on the account; and (3) the defendant agreed to pay the amount due." *Am. Express Nat'l Bank v. ZMZ Glob., Inc.*, No. 25-cv-18780, 2026 U.S. Dist. LEXIS 118281, at *6 (D.N.J. May 28, 2026)

[5] Under New Jersey law, contractual indemnification provisions are interpreted under the same principles governing contract interpretation generally. *See Calabria Ristorante, Inc. v. Ruggiero Seafood, Inc.*, No. 21-3712 (JXN) (AME), 2025 U.S. Dist. LEXIS 192949, at *6-7 (D.N.J. Sept. 30, 2025). The court's task is to determine and enforce the parties' intent as expressed in the agreement, and where the indemnification provision is clear and unambiguous, it should be enforced according to its terms. *Id.* (internal citations omitted).

Where a court identifies pleading deficiencies, leave to amend should be freely granted unless amendment would be futile. *See Vita Grp. LLC v. Compass Grp. USA, Inc.*, Civil Action No. 21-16291, 2022 U.S. Dist. LEXIS 77240, at *9 (D.N.J. Apr. 28, 2022) (dismissing a breach of contract claim without prejudice and permitting amendment to cure alleged pleading deficiencies). Similarly, the Third Circuit has recognized that under FED. R. CIV. P. 15(a) "the court should freely give leave when justice so requires" and dismissal with prejudice is appropriate only where the deficiency cannot be cured through amendment and further amendment would therefore be futile. *United States ex rel. Schumann v. AstraZeneca Pharms. L.P.*, 769 F.3d 837, 848-49 (3d Cir. 2014) (internal citations omitted).

Here, the Motion repeatedly argues that Bayonne failed to plead particular facts concerning the operation of Section 5.03(c). If the Court concludes that additional factual allegations are necessary, those allegations could readily be supplied through amendment. Accordingly, dismissal with prejudice is unwarranted, and Bayonne respectfully requests leave to amend in the alternative.

## V. Conclusion

The Motion fails because it rests on a fundamental mischaracterization of both the Agreements and the Complaint. Bayonne plausibly alleges that Fermi breached multiple independent obligations arising under Sections 5.03(b), 5.03(c), 5.03(d), 5.03(f), and 6.03 of the Agreements, including obligations relating to repair, restoration, cleanup, Seller's Completion Rights, Daily Charges, reimbursement of completion costs, and indemnification. Rather than identify a pleading deficiency, Fermi asks the Court to adopt its preferred interpretation of the Agreements and reject Bayonne's competing interpretation at the pleading stage. That is not a proper basis for dismissal under Rule 12(b)(6).

Based on the foregoing, Bayonne respectfully requests that the Court enter an Order denying the Motion to Dismiss in Part, awarding Bayonne all relief to which it is entitled, and granting such other and further relief as the Court deems just and proper.

Date: September 8, 2026.

Lauren Kessler Rose
Michael Anthony Shaw
JONES WALKER LLP
201 S. Biscayne Blvd., Ste. 3000
Miami, FL 33131
Telephone: 305-679-5700
lrose@joneswalker.com
tshaw@joneswalker.com

Lauren C. Mastio (LA State Bar No. 33077)
L. Etienne Balart (LA State Bar No. 24951)
JONES WALKER LLP
*Admitted Pro Hac Vice*
201 St. Charles Ave., Ste. 5100
New Orleans, LA 70170
Telephone: 504-582-8584
lmastio@joneswalker.com
ebalart@joneswalker.com

Omar Abdussellam Bareentto
Zachary R. Cimring
MCCARTER & ENGLISH LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
Telephone: (973) 849-4001
obareentto@mccarter.com
zcimring@mccarter.com

*Counsel for Bayonne Plant Holding, L.L.C.*