**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| Bayonne Plant Holding, L.L.C.,<br>Plaintiff,<br>v.<br>Fermi Equipment Holdco, LLC,<br>Defendant. | Civil Case No. 2:26-cv-07904-JXN-JBC |

**REPLY BRIEF IN SUPPORT OF DEFENDANT'S**
**MOTION TO DISMISS IN PART PURSUANT TO FED. R. CIV. P. 12(b)(6)**

SHOOK, HARDY & BACON, L.L.P.
1 Rockefeller Plaza, Suite 2801
New York, New York 10020
(212) 989-8844

-and-

DAVILLIER LAW GROUP, LLC
935 Gravier Street, Suite 1702
New Orleans, Louisiana 70112
(504) 582-6998

*Attorneys for Defendant Fermi Equipment Holdco, LLC*

# TABLE OF CONTENTS

**Page**


I. PRELIMINARY STATEMENT ........ - 1 -

II. ARGUMENT ........ - 2 -

A. The Motion is timely. ........ - 2 -

B. Bayonne Has Abandoned the "Pre-Removal Condition" Standard on Which Its Complaint Rests. ........ - 2 -

C. The Plain Language of the Agreements is Properly Applied on This Motion. ........ - 3 -

D. Seller's Completion Rights, and the Daily Charges that Depend on Them, Tie Restoration to Section 5.03(c). ........ - 4 -

E. The Punch List Did Not Amend the Agreements. ........ - 6 -

III. CONCLUSION ........ - 6 -

## I. PRELIMINARY STATEMENT

Bayonne's opposition confirms that this motion presents a narrow question of law: whether either Agreement impose a restoration obligation on Fermi beyond the one stated in Section 5.03(c) of the Equipment Purchase Agreement ("EPA"). Bayonne's Complaint says yes, alleging that Fermi was bound to restore Bayonne's buildings to their "pre-removal condition."[1] The Agreements say otherwise. The only restoration duty contained in either Agreement is the Section 5.03(c) obligation to restore consented temporary structural modifications, and the Complaint pleads no facts sufficient to invoke that provision.

Fermi does not ask the Court to dismiss the Complaint in its entirety. Bayonne pleads obligations under Sections 5.03(b), 5.03(c), 5.03(d), 5.03(f), and 6.03,[2] and Fermi has never disputed that it agreed to repair damage it caused, remove its equipment and debris, and to clean up the Site.[3] Those claims may proceed. Fermi asks only that the Court holds, as a matter of law, that (i) Section 5.03(c) is the sole contractual source of any restoration obligation, and (ii) the Complaint pleads no facts sufficient to invoke it. Whether particular costs fall into categories of "restoration," "repair," or "cleanup" presents a factual issue for another day. Whether the Agreements impose a broader "pre-removal condition" restoration obligation is a legal question the Court can and should decide now.

---

[1]Compl. (ECF No. 1) ¶¶ 7, 36–37, 58(d).

[2]Opp. (ECF No. 32) at 7 ("Bayonne alleges multiple independent contractual obligations . . . arising under Sections 5.03(b), 5.03(c), 5.03(d), 5.03(f), and 6.03 of the Agreements."); *see also* Compl. ¶ 37.

[3]Mem. in Supp. (ECF No. 31-1) at 7 (Fermi "agreed to repair any damage it caused and to clean up afterward."); Opp. at 2 n.2 (acknowledging same).

## II. ARGUMENT

### A. The Motion is timely.

Fermi complied with the Court's pre-motion procedures. It submitted a pre-motion letter, Bayonne responded, and on August 11, 2026, the Court, having considered both parties' submissions, determined that a conference would not be productive and expressly authorized Fermi to "proceed by filing [its] proposed motion."[4] The Court's procedures afford a party so directed an additional seven days to file. Rule IV(A). Fermi filed within the time the Court allowed.

Bayonne's contrary reading would undermine the purpose of the Court's pre-motion procedure by requiring a party to await the Court's determination regarding a requested conference while simultaneously forfeiting the motion the conference was intended to address. Nothing in Rule IV(A) supports that result. Bayonne's own arithmetic is internally inconsistent, as it references both a July 20 and July 29 deadline. Most importantly, the Court expressly authorized Fermi to proceed with filing its motion after considering both parties' pre-motion submissions. Bayonne identifies no prejudice arising from the timing of the filing, and there is no basis to deny on procedural grounds a motion the Court expressly contemplated and authorized The Motion should therefore be decided on the merits.

### B. Bayonne Has Abandoned the "Pre-Removal Condition" Standard on Which Its Complaint Rests.

The Complaint's restoration theory is anchored by a single repeated phrase: that Fermi was obligated to restore Bayonne's buildings to their "pre-removal condition."[5] Fermi's motion demonstrated that this phrase appears nowhere in the EPA or the First Amendment. Bayonne's

[4]Aug. 11, 2026 Text Order, ECF No. 22; *see* Judge Neals, Rules and Procedures § IV.A.

[5]Compl. ¶¶ 7 ("restoring Bayonne's buildings to their pre-removal condition"), 36–37; Mem. in Supp. at 1, 7, 12.

eighteen-page opposition does not use the phrase once, does not defend it, and does not identify any provision of either Agreement from which such an obligation could be derived. Instead, Bayonne relies on generalized references to "extensive obligations relating to repairs, restoration, cleanup" (Opp. at 1) without identifying any restoration duty outside Section 5.03(c).

Notably, Bayonne does not identify any provision in either Agreement imposing a duty to restore the facility to its 'pre-removal condition.'" A plaintiff seeking to enforce a contractual obligation must identify the contractual provision from which that obligation arises. Yet Bayonne never identifies a contractual source for the "pre-removal condition" standard that forms the basis of its restoration claim.

The Court therefore should hold that no such" restoration obligation exists under the parties' Agreements.

## C. <u>The Plain Language of the Agreements is Properly Applied on This Motion.</u>

Bayonne attached both Agreements to its Complaint. They are therefore "integral to or explicitly relied upon in the complaint" and squarely before the Court.[6] Whether contract language is clear or ambiguous is a question of law, and, where the terms are clear, the Court must enforce them as written.[7] Bayonne's own authority confirms that a defendant cannot obtain dismissal based on an "erroneous" contract interpretation,[8] but where the contract is unambiguous, dismissal

---

[6] *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

[7] *Teamsters Indus. Emps. Welfare Fund v. Rolls-Royce Motor Cars, Inc.*, 989 F.2d 132, 135 (3d Cir. 1993); *Barila v. Bd. of Educ. of Cliffside Park*, 241 N.J. 595, 616 (2020) ("when the intent of the parties is plain and the language is clear and unambiguous, a court must enforce the agreement as written") (cleaned up); Quinn v. Quinn, 225 N.J. 34, 45 (2016); *Karl's Sales & Serv., Inc. v. Gimbel Bros., Inc.*, 249 N.J. Super. 487, 493 (App. Div. 1991).

[8] *Teva Pharms. USA, Inc. v. Biogen Int'l GmbH*, 753 F. Supp. 3d 358, 363 (D.N.J. 2024) (quoted at Opp. at 14).

remains appropriate if the defendant's interpretation reflects the plain text of the agreement. Bayonne's cases hold only that ambiguous contracts await discovery; they do not hold that a court must accept a plaintiff's characterization of an unambiguous one.

Notably, Bayonne does not contend that Section 5.03(c) is ambiguous. Rather, it argues that the Court should defer consideration of the contractual language until a later stage of the case. But Bayonne's Complaint alleges that Fermi breached a specific contractual obligation, and Bayonne itself acknowledged that the Court is "charged to consider whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief." Opp. at 6.

That inquiry cannot be performed without examining the contract on which Bayonne's claims are based. Applying the Agreements here does not require discovery or resolution of factual disputes. It requires only a comparison of the language contained in Section 5.03(c) with the restoration obligation alleged in the Complaint. Because Bayonne's alleged "pre-removal condition" obligation appears nowhere in either Agreement, and because Section 5.03(c) contains the only restoration obligation identified in the parties' contracts, the Court may properly resolve this issue as a matter of law at the pleading stage.

### D. Seller's Completion Rights, and the Daily Charges that Depend on Them, Tie Restoration to Section 5.03(c).

Bayonne argues that amended Section 5.03(d) identifies three categories of work: "the Pick Up, the restoration work required by Section 5.03(c), and the cleanup of Seller's Site", and that Daily Charges continue until all three are complete. Opp. at 9, 11–12. Fermi agrees. Indeed, the language Bayonne quotes confirms Fermi's point: the only "restoration work" contemplated by Section 5.03(d) is restoration work "required by Section 5.03(c)."[9] The Daily Charge likewise

[9] First Amendment to the Equipment Purchase Agreement (Doc No. 1-3) § 4 (amending EPA § 5.03(d)) (emphasis added).

accrues after abandonment only "until Seller completes its exercise of Seller's Completion Rights."[10] Bayonne quotes the definition of Seller's Completion Rights without disputing it: Seller may "(i) dispose of the remaining unremoved Purchased Assets and any debris or waste materials left by Buyer and (ii) perform or complete the restoration of Seller's Site as required by Section 5.03(c)."[11]

The consequence follows from Bayonne's own interpretation of the Agreements. Debris and equipment disposal under clause (i) is not at issue on this motion. Restoration under clause (ii), however, is recoverable only to the extent Section 5.03(c) was triggered. Yet, the Complaint does not allege that Fermi requested consent for any temporary structural modification, that Bayonne provided consent, that an Estimated Restoration Cost was prepared, or that a Restoration Deposit was established. Instead, Bayonne alleges that it performed months of "restoration and remediation work" after Fermi departed the Site and that the $50,000 Daily Charge ran through April 16, 2026, on that basis.[12]

To the extent those charges are based upon restoration work not required by Section 5.03(c), they lack any contractual foundation. Bayonne may ultimately attempt to prove that some portion of its claimed costs fall within clause (i) rather than clause (ii). That issue is not presented by this motion. What Bayonne may not do, however, is recover restoration-related damages based on a restoration obligation that does not appear anywhere in the Agreements.

[10] First Amendment to the Equipment Purchase Agreement at § 5 (amending EPA § 5.03(f)); Compl. ¶ 52.

[11] Opp. at 12 (quoting First Amendment § 5.03(d)).

[12] Compl. ¶¶ 39–43, 52, 57(d); Opp. at 4–5, 11.

### E. **<u>The Punch List Did Not Amend the Agreements.</u>**

Bayonne leans heavily on the "Remaining Punch List Items" prepared after Fermi departed the Site, as well as its allegation that Fermi "did not dispute responsibility" for those items.[13] But the punch list is not a contract. It is a unilateral document prepared by Bayonne after the parties executed the Agreement and the First Amendment More importantly, the punch list cannot expand the obligations contained in the parties' written Agreements, nor can it create a restoration obligation absent from those Agreements. The scope of Fermi's contractual duties is determined by the terms the parties actually agreed to, not by a post hoc list of items Bayonne later characterized as "restoration."

Bayonne's reliance on the punch list therefore underscores the central issue presented by this motion. Even accepting the allegations concerning the punch list as true, Bayonne still must identify a contractual imposing the "pre-removal condition" restoration obligation on which its restoration-related damages claim depends. It has not done so.

## III. CONCLUSION

The Complaint alleges that Fermi was obligated to restore Bayonne's facility to its "pre-removal condition." The Agreement and First Amendment contain no such obligation, and Bayonne's opposition identifies no contractual provision creating one. The only restoration obligation contained in the Agreements arises under Section 5.03(c), and the Complaint does not allege facts sufficient to invoke that provision. Accordingly, Fermi therefore respectfully requests that the Court dismiss the Complaint to the extent it seeks restoration-based damages and Daily Charges predicated on Bayonne's alleged performance of restoration work not required by Section 5.03(c).

[13]Compl. ¶¶ 39–40; ECF No. 1-4; Opp. at 4, 15.

Dated: New York, New York
September 14, 2026

Respectfully submitted,

SHOOK, HARDY & BACON, L.L.P.

By: *s/Alicia Lipton*
Alicia Lipton
Attorney ID No.: 443802023
1 Rockefeller Plaza, Suite 2801
New York, New York 10020
Phone: (212) 989-8844
Fax: (929) 501-5455
Email: alipton@shb.com

-and-

Charles F. Zimmer II (La. Bar No. 26759, admitted *pro hac vice*)
Daniel E. Davillier (La. Bar No. 23022, admitted *pro hac vice*)
DAVILLIER LAW GROUP, LLC
935 Gravier Street, Suite 1702
New Orleans, Louisiana 70112
Telephone: (504) 582-6998
Facsimile: (504) 582-6985
Email: czimmer@davillierlawgroup.com
Email: ddavillier@davillierlawgroup.com
*Attorneys for Defendant Fermi Equipment Holdco, LLC*

**CERTIFICATION OF SERVICE**

I hereby certify that on this 14th day of September, 2026, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system which will send notifications to all counsel of record.

*s/Alicia Lipton*
Alicia Lipton